## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

EMILY FULLER,                                )
                                             )
        Plaintiff,                   )
                                             )   Case No. 0:17-cv-62243-BB
    v.                                   )
                                             )   Hon. Judge Beth Bloom
STERLING JEWELERS INC.,                      )
                                             )   **ORAL ARGUMENT REQUESTED**
        Defendant.                   )
                                             )
                                             )

**STERLING'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
AND IN THE ALTERNATIVE MOTION TO TRANSFER
TO THE NORTHERN DISTRICT OF OHIO
<u>WITH INCORPORATED MEMORANDUM OF LAW</u>**

Courtney C. Booth, Esq. (*pro hac vice* to be filed)
cbooth@beneschlaw.com
**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**
333 West Wacker Drive, Suite 1900
Chicago, Illinois  60606
Telephone:  (312) 212-4949
Facsimile:  (312) 767-9192

Mark D. Schellhase, Esq. (Florida Bar No. 57103)
mark.schellhase@gray-robinson.com
**GRAY ROBINSON, P.A.**
225 N.E. Mizner Blvd., Suite 500
Boca Raton, Florida 33432
Telephone:  (561) 368-3808
Facsimile:  (561) 368-4008

*Counsel for Sterling Jewelers Inc.*

Sterling Jewelers Inc., by and through its undersigned counsel, respectfully submits this Motion to Dismiss for Lack of Personal Jurisdiction and Alternative Motion to Transfer this case to the United States District Court for the Northern District of Ohio, pursuant to 28 U.S.C. § 1404(a), with Incorporated Memorandum of Law.

## PRELIMINARY STATEMENT

The Eleventh Circuit has indicated—and courts in this District have universally held—that "the mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum." *Fraser v. Smith*, 594 F.3d 842, 847 (11th Cir. 2010) (internal quotations and citation omitted); *Roof & Rack Prod., Inc. v. GYB Inv'rs, LLC*, No. 13-80575, 2014 WL 3116413, at *4 (S.D. Fla. July 8, 2014). This is, however, the fundamental premise of this action, which arises out of Plaintiff's contention that Sterling's website violates the Americans with Disabilities Act ("ADA") insofar as it is allegedly inaccessible to visually impaired persons. Plaintiff contends that the mere fact that she accessed the website www.kay.com (the "Website") from the state of Florida allows her to haul Sterling before this Court. She cannot. Notably, apart from the fact that Plaintiff lives in Florida, she provides not a single allegation pertaining to the personal jurisdiction of this Court over Sterling. Simply put, this case belongs in Ohio (if anywhere).[1]

---

[1]   Simultaneously with this filing, Sterling has filed a Motion to Dismiss pursuant to Rule 12(b)(6) on the basis that Plaintiff's boilerplate complaint fails to state a claim. Pursuant to the Florida Supreme Court, this Court must first determine whether Plaintiff has stated a claim prior to evaluating whether this Court has personal jurisdictions. *See Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) (stating that before a Florida court addresses personal jurisdiction, the court must determine "whether the allegations of the complaint state a cause of action"); *see also PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (same).

Concerning general jurisdiction, Plaintiff has not, and cannot, allege that Sterling is "essentially at home" in Florida. *See, e.g., Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Sterling has no offices in Florida and has no corporate employees in Florida. At best, Sterling has a handful of retail locations—which have no control over the Website—in Florida. Sterling's operation of a website, without more, cannot give rise to general jurisdiction.

Concerning specific jurisdiction, it is unclear Plaintiff is even arguing such jurisdiction exists here, let alone which prong of the Florida long-arm statute she is seeking to take advantage of. Assuming, for the sake of argument, Plaintiff is claiming jurisdiction on the basis of an allegedly tortious activity occurring within the state, Fla. Stat. Ann. § 48.193(1)(a)(2), Plaintiff has failed to allege any *intentional* "suit-related conduct [that] create[s] a substantial connection with the" State of Florida. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Indeed, a website— even an interactive website—cannot form the basis of specific jurisdiction unless it is *targeted* at the forum state. *See, e.g., Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) (noting the focus, in the website context, is "on the deliberate actions by the defendant to target or direct itself toward the forum state"). Furthermore, Plaintiff's claim does not stem from the Website's interactivity, but rather from merely accessing it.

In the event this Court declines to dismiss the complaint, Sterling respectfully requests that this case be transferred, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Northern District of Ohio. Courts in the Eleventh Circuit routinely transfer cases where jurisdiction over the defendant is uncertain in the transferor district, but is certain in the transferee district. It would thus be prudent, should the Court find jurisdiction a close issue, to

transfer this case to Ohio to avoid wading into highly contentious issues of a constitutional nature.  Similarly, the convenience of the witnesses, location of the evidence and situs of material events favors transferring this case to Ohio.  The only connection this case has to Florida is that it happens to be where Plaintiff was when she allegedly viewed the Website at issue.

## FACTUAL BACKGROUND

### I.    THE COMPLAINT.[2]

On November 16, 2017, Plaintiff initiated this action against Sterling, alleging claims for violation of the ADA and common law trespass.  (*See* DE 1.)

Plaintiff's complaint derives entirely from Sterling's Website, www.kay.com.  Plaintiff alleges, in sum, that the Website is not accessible to visually impaired persons.  (*See* DE ¶¶ 12-47.)  Plaintiff identified a handful of generic "barriers," though declines to identify how those "barriers" impacted her access.  (*See id.* ¶¶ 21.)  Plaintiff secondarily claims that Sterling installed "software" on her computer without her consent when she visited the Website, amounting to a trespass.  (*See id.* ¶¶ 48-52.)  Plaintiff seeks through this action declaratory and injunctive relief, damages and attorneys' fees.  (*Id.* at 15-16.)

### II.   STERLING'S LACK OF CONTACTS WITH THE STATE OF ILLINOIS.

Sterling is a Delaware corporation with its principal place of business in Akron, Ohio.  (*See* Declaration of Ray Habel, attached hereto as Exhibit A ["Habel Decl."], ¶ 2.)  Sterling does not maintain any offices or corporate employees in Florida.  (*Id.* ¶ 3.)  Of the 1,621 stores

---

[2]    Plaintiff and her counsel have flooded Florida courts with nearly identical complaints.  Plaintiff herself has filed **40** complaints since July of this year.  Plaintiff's counsel, not to be outdone, has filed more than **50** such cases in that time period.

Sterling owns nationwide across all of its brands, only 118 operate in Florida. (*Id.* ¶ 4.) None of the employees in these Florida retail locations have control over the Website. (*Id.* ¶ 5.)

As it pertains to the Website, the current iteration was designed primarily be eHouse Studio, based in Charleston, South Carolina, in or about late 2014. (*Id.* ¶ 6.) Since the launch of the current iteration of the Website in May of 2016, Sterling's in-house Kay.com e-commerce team—based entirely in Akron, Ohio, has been responsible for the design, operation, implementation and oversight of the Website. (*Id.* ¶¶ 7, 8.) The Website is available nationwide; it does not, nor was it intended to, target any one state specifically. (*Id.* ¶ 9.)

## DISCUSSION

## I.     THIS COURT LACKS PERSONAL JURISDICTION OVER STERLING.

### A.     Legal Standard Under FRCP 12(b)(2) & Florida's Long Arm Statute.

Plaintiff bears the burden of proving a prime facie case of personal jurisdiction. *See, e.g.*, *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988); *see also Piscatelli v. Nationstar Mortg., LLC*, No. 13-cv-80692, 2013 WL 7137480, at *5 (S.D. Fla. Dec. 3, 2013) ("A prima facie case requires factual allegations that suggest 'with reasonable particularity' the possible existence of requisite 'contacts between [the party] and the forum state.'" (citation omitted)). Specifically, in order to prove a prima facie case, "[f]irst, the plaintiff must allege sufficient facts in his complaint to initially support long arm jurisdiction before the burden shifts to the defendant to make a prima facie case showing the inapplicability of the statute." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). If the defendant sustains this burden, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Id.*

Courts in this District undertake a two-step inquiry to determine whether the exercise of personal jurisdiction over a non-resident defendant is proper.  First, courts must determine whether Florida's long-arm statute provides jurisdiction.  *See, e.g.*, *PVC Windoors*, 598 F.3d at 807.  Only if the long-arm statute provides jurisdiction does a court then determine whether "the defendant has minimum contacts with the forum state" and, if it does, whether the court's exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *Id.* (internal citation and quotations omitted); *see also Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989) ("[A] plaintiff may not constitutionally apply the [long-arm] statute to obtain jurisdiction in the absence of the requisite minimum contacts with the forum state.").  To the extent the Florida long-arm statute and federal due process standards differ, Florida's long-arm statute is *more* restrictive.  *See, e.g.*, *Fraser*, 594 F.3d at 848; *Krauser v. Evollution IP Holdings, Inc.*, 975 F. Supp. 2d 1247, 1265 (S.D. Fla. 2013); *Alpha Comm Enterprises, Inc. v. Next Vision, Inc.*, No. 613CV1379ORL37DAB, 2014 WL 12539706, at *3 (M.D. Fla. Mar. 27, 2014).

Under the Florida long-arm statute, there are two bases for the exercise of personal jurisdiction—general and specific.  *PVC Windoors*, 598 F.3d at 808.  As it pertains to general jurisdiction, Florida law provides that a court may exercise jurisdiction "if the defendant engages in 'substantial and not isolated activity' in Florida." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting Fla. Stat. Ann. § 48.193(2)).  As it pertains to specific jurisdiction, Florida law lists acts that give rise to jurisdiction. *Id.*; Fla. Stat. Ann. § 48.193(1)(a).

### B.   Sterling Is Not "Essentially at Home" in Florida, and Thus This Court Lacks General Jurisdiction.

Under Florida's long-arm statute, the reach of its general jurisdiction provision "extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth

Amendment." *Carmouche*, 789 F.3d at 1204 (internal citations and quotation omitted).  To that end, the Supreme Court has recently clarified and raised the bar for general jurisdiction.  *See Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1336 (S.D. Fla. 2016) (recognizing that recent Supreme Court decisions were a "dramatic change in the personal jurisdiction landscape").  Specifically, simple "continuous and systematic" contacts are *insufficient* to establish general jurisdiction.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014).  Rather, general jurisdiction is only available where the party's "affiliations with the State are so 'continuous and systematic' as to render them ***essentially at home*** in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (emphasis added). Indeed, "only a limited set of affiliates with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S. Ct. at 760.  These "limited" affiliations have only thus far been held to extend to a business's place of incorporation and principal place of business. *See Carmouche*, 789 F.3d at 1204; *see also Daimler AG*, 134 S. Ct. at 761 (finding no general jurisdiction over Daimler—a German company—despite sizable sales of a subsidiary in California).

As is clear from the Habel Declaration, Sterling is (i) a Delaware corporation with (ii) its principal place of business in Akron, Ohio.  (*See* Habel Decl. ¶ 2.)  Plaintiff thus cannot assert jurisdiction in Florida using the only places the Supreme Court and Eleventh Circuit have identified as having general jurisdiction.  *See, e.g.*, *Carmouche*, 789 F.3d at 1204; *Thompson*, 174 F. Supp. 3d at 1337 (quoting *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) ("It is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.").)  For Plaintiff to meet the general jurisdiction threshold, she must establish this is one of the truly "exceptional circumstances" where Sterling

operations in Florida are "so substantial and of such a nature as to render the corporation at home" in Florida. *Thompson*, 174 F. Supp. 3d at 1334 (quoting *Daimler*, 134 S. Ct. at 761).  It is not.

Here, Plaintiff's only plausible basis for jurisdiction is that Sterling does business in the state of Florida.  (DE 1 ¶ 7.)  There is no question Plaintiff's basis for general jurisdiction falls flat.  Under the general jurisdiction analysis, "the defendant's in-state contacts," in a vacuum, are irrelevant.  *Daimler*, 134 S. Ct. at 762 n.20.  Rather, "[g]eneral jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide.  A corporation that operates in many places can scarcely be deemed at home in all of them." *Id.*  As confirmed by the Habel Declaration, Sterling operates 1,621 stores nationwide, and only 118 of those stores (less than 8%) are in Florida.  (*See* Habel Decl. ¶¶ 4, 7.)  There are no corporate employees or corporate offices in Florida.  (*Id.* ¶¶ 3.)

Sterling's Florida contacts thus fall well short of the "constant and pervasive" contacts required to render it "essentially at home" post-*Daimler*.  *See, e.g.*, *Waite v. AII Acquisition Corp.*, No. 15-CV-62359, 2016 WL 2346768, at *6 (S.D. Fla. Mar. 10, 2016) ("The Eleventh Circuit has made clear that sales and marketing efforts, even together with holdings and operations in Florida, are insufficient to render a nonresident company at home in Florida.") (Bloom, J.) *reconsideration granted as to specific jurisdiction in*, 2016 WL 2346743 (S.D. Fla. May 4, 2016); *Atmos Nation LLC v. Alibaba Grp. Holding Ltd.*, No. 0:15-CV-62104-KMM, 2016 WL 1028332, at *3 (S.D. Fla. Mar. 15, 2016) (noting that general jurisdiction requires that "the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principle place of business.") (quoting *Carmouche*, 789 F.3d at 1205).  Indeed, the Supreme Court found the operation of an office and

facilities and significant sales in a state were not enough to provide general jurisdiction. *See Daimler*, 134 S. Ct. at 760.

Furthermore, this Court has held the mere availability of the Website in Florida failed to meet even the *pre-Daimler* threshold for general jurisdiction. *See, e.g.*, *Shipping & Transit, LLC v. WOV, LLC*, No. 16-cv-80860, 2016 WL 5338078, at *3 (S.D. Fla. Sept. 23, 2016) (Bloom, J.) (citing on pre-*Daimler* cases and holding "defendant's website alone does not establish general jurisdiction when it is not specifically directed at the forum state . . . but instead is available to all customers throughout the country who have access to the Internet.") (internal quotations and citation omitted); *ArrivalStar v. Axis Glob. Logistics*, No. 11-80585, 2012 WL 488192, at *5 (S.D. Fla. Feb. 14, 2012) (same); *Atmos*, 2016 WL 1028332, at *3 (finding no general jurisdiction over Alibaba.com).   Plaintiff cannot allege any contacts with Florida that would render Sterling "essentially at home" there; in other words, such contacts closely approximating the contacts that characterize a place of formation or principal place of business. *See Carmouche*, 789 F.3d at 1205.

Sterling is thus not "essentially at home" in Florida.   To hold otherwise "would not accord with the 'fair play and substantial justice' due process demands." *Daimler*, 134 S.Ct at 763.

**C.     The Mere Operation of a Website That Is Not Targeted to the State of Florida Cannot Give Rise to Specific Jurisdiction for Either of Plaintiff's Claims.**

To begin, Plaintiff does not allege specific jurisdiction; Plaintiff makes no citation to Florida's long-arm statute whatsoever.   This Court should find that it lacks specific jurisdiction over Sterling on that basis alone. *See, e.g.*, *Thompson*, 174 F. Supp. 3d at 1334 ("Because Thompson does not allege specific jurisdiction, the Court need only determine whether general

jurisdiction exists over the Excursion Entities."). Out of an abundance of caution, however, Sterling addresses specific jurisdiction assuming, for the sake of argument, that Plaintiff is seeking to allege that Sterling's alleged ADA violation and trespass bring it within the auspices of Fla. Stat. Ann. § 48.193(1)(a)(2).

### i.     The Specific Jurisdiction Analysis Post-Walden.

Specific jurisdiction exists only where "the *defendant's* suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121 (emphasis added); *see also id.* at 1125 ("The proper question is . . . whether the defendant's conduct connects him to the forum in a meaningful way."). While the Eleventh Circuit has yet to apply *Walden*, courts within this District have looked to the Circuit's three-part test for minimum contacts:

> The minimum-contacts test for specific jurisdiction has three elements: (1) the defendant must have contacts related to or giving rise to the plaintiff's cause of action; (2) the defendant must, through those contacts, have purposefully availed itself of forum benefits; and (3) the defendant's contacts with the forum must be such that it could reasonably anticipate being haled into court there.

*Atmos*, 2016 WL 1028332, at *5 (internal quotations and citation omitted). *Walden* provides an added gloss to these elements inasmuch as (i) specific jurisdiction requires "a direct causal relationship between the defendant, the forum, and the litigation," (ii) the defendant must have intentional contacts "with the forum State itself," and (iii) it is the defendant's intentional contacts—not the contacts of the plaintiff or any third party—that matter. *See Walden*, 134 S. Ct. at 1121-22, 1126; *see also Waite v. AII Acquisition Corp.*, No. 15-CV-62359, 2016 WL 2346743, at *3 (S.D. Fla. May 4, 2016) (Bloom, J.) (applying *Walden* to the Eleventh Circuit test); *Riley v. Donatelli*, No. 3:16-CV-898, 2017 WL 3316479, at *6 (M.D. Fla. Aug. 3, 2017) ("Significantly, in *Walden*, the Supreme Court emphasized that the 'effects' of a defendant's

intentional conduct must connect the defendant to the forum, not just to a plaintiff who lives there.").

Following *Walden*, the only contact relevant to this case is Sterling's Website.  In other words, not just any contact is sufficient, rather "[f]or a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121; *see also Bristol-Myers Squibb v. Superior Court of California*, 137 S. Ct. 1773, 1780 (2017) ("[T]he *suit* must arise out of or relate to the defendant's contacts with the *forum*.") (internal quotation and citation omitted, emphasis in original).  Not just any contacts will do; the "connection between the forum *and the specific claims at issue*" is what is necessary.  *Bristol-Myers*, 137 S. Ct. at 1781 (emphasis added).  And "[w]hen there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state." *Id.*

Plaintiff's claims stem solely from (i) the accessibility of the Website and (ii) software allegedly installed on Plaintiff's computer from the Website.  (*See* DE 1); *see also Gullen v. Facebook.com, Inc.*, No. 15-7681, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016) (disregarding contacts irrelevant to the claims).  The contacts sufficient to create specific jurisdiction must relate solely to these allegations.  Likewise, the alleged location of Plaintiff's injury is, by itself, irrelevant.  *See Walden*, 134 S. Ct. at 1125 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").  That Plaintiff may have just so happened to access the Website from Florida is thus not pertinent.

### ii. *Sterling Did Not Purposefully Direct Any Action to the State of Florida Through its Website.*

Turning to the Website at issue, though the Eleventh Circuit has not yet addressed the

impact of a website on the jurisdiction analysis, *Fraser*, 594 F.3d at 847, courts evaluating

specific jurisdiction on the basis of a website, post-*Walden*, have uniformly required that the

website *target the forum state*. *See, e.g.*, *Advanced Tactical Ordnance Sys., LLC v. Real Action

Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) ("[T]he operation of an interactive website

does not show that the defendant has formed a contact with the forum state.  And, without the

defendant's creating a sufficient connection . . . with the forum state itself, personal jurisdiction

is not proper."); *Pub. Impact, LLC v. Boston Consulting, Inc.*, 117 F. Supp. 3d 732, 744

(M.D.N.C. 2015) ("[N]othing about CPI's website suggests that it is specifically directed at

North Carolina."); *Gullen*, 2016 WL 245910, at *2 ("Because plaintiff does not allege that

Facebook targets its alleged biometric collection activities at Illinois residents, the fact that its

site is accessible to Illinois residents does not confer specific jurisdiction over Facebook."); *JST

Performance, Inc. v. Shenzhen Aurora Tech.*, No. 14-1569, 2015 WL 12683958, at *4 (D. Ariz.

Sept. 2, 2015) ("In other cases where specific jurisdiction was established, the defendant directed

significant effort advertising to and targeting the forum state."); *Smarter Every Day, LLC v.

Nunez*, No. 15-01358, 2017 WL 1247500, at *4 (N.D. Ala. Apr. 5, 2017) ("Defendants utilized a

passive website and Facebook page that were not specifically aimed towards promoting business

in the Alabama market.").[3]

---

[3]     Courts within the Southern District of Florida have, in the absence of Eleventh Circuit precedent, considered the so-called *Zippo* test in the context of websites. *See, e.g.*, *Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.*, 645 F. Supp. 2d 1130, 1140 (S.D. Fla. 2009).  This test uses a sliding scale for websites based on level of interactivity, from passive to interactive. *See id.* at 1139-40.  This test not only pre-dates *Walden* and is thus of limited value, but has been questioned by the Eleventh Circuit. *See id.*; *see also Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n. 26 (11th Cir. 2009).  In any event, the lawsuit at issue has nothing to do with the interactivity of the Website.  Plaintiff's claims stem simply from having visited the Website, not from ordering or transacting any business through the site or engaging with the site in any manner.

This application of *Walden* in the website context squares directly with the Supreme Court's *Calder v. Jones* decision, which gave rise to the *Calder* effects test.  *See* 465 U.S. 783 (1984).  This test, which applies to intentional torts—ostensibly Plaintiff's theory of specific jurisdiction, particularly as it concerns his common law trespass claim—requires "an intentional tort, ***expressly aimed*** at a specific individual in the forum whose effects were suffered in the forum."  *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008) (emphasis added); *see also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013) (noting, under *Calder*, specific jurisdiction requires the express aiming of the conduct at issue).

The recent decision from the Northern District of Illinois in *Gullen v. Facebook* provides directly analogous and persuasive precedent concerning the evolving nature of websites in the context of specific jurisdiction.  In *Gullen*, the plaintiff brought suit against Facebook over the alleged collection of his biometric information through photos uploaded on to the website in violation of the Biometric Information Privacy Act ("BIPA").  *See* 2016 WL 245910, at *1.  The Court, evaluating specific jurisdiction, recognized that "Facebook uses facial recognition technology on 'every-user-uploaded photo,' not just on photos uploaded in or by residents of Illinois."  *Id.* at *2.  Accordingly, the Court held that "[b]ecause plaintiff does not allege that Facebook targets its alleged biometric collection activities at Illinois residents, the fact that its site is accessible to Illinois residents does not confer specific jurisdiction over Facebook."  *Id.* Turning to the *Calder* effects test, the Court likewise held that jurisdiction was lacking even assuming the BIPA claim at issue was viewed as an intentional tort.  *Id.* at *3.  The Court concluded that there was simply no allegation that Facebook targeted Illinois in any way, let alone knew that its technology would impact the plaintiff in Illinois.  *Id.*

Here, whether evaluating personal jurisdiction under *Walden* more generally or *Calder* specifically—again, it is unclear whether Plaintiff seeks to take advantage of Fla. Stat. Ann. § 48.193(1)(a)(2)—jurisdiction is lacking. As Plaintiff alleges, the Website "allows the public" generally to access information and is "open through the internet to the public . . . ." (DE 1 ¶¶ 12, 14, 16, 55.) As in *Gullen*, Plaintiff fails to allege that Sterling targets the state of Florida in any way through the Website. At best, Plaintiff contends that the Website is available anywhere in exactly the same manner as it is available in Florida. (*See id.*; *see also* Habel Decl. ¶ 9 (noting that the Website is available anywhere there is internet connectivity).) That is, in fact, the basis of the lawsuit—the Website does not provide equal access to visually impaired persons *nationwide*. (*See id.* ¶¶ 54-65.) This is insufficient to confer specific jurisdiction in Florida. *See Roblor*, 645 F. Supp. 2d at 1142 ("The mere world-wide accessibility of Karrier's websites in the absence of any actual interaction will not support a finding that jurisdiction attaches."); *cf. Shipping & Transit*, 2016 WL 5338078, at *3 (finding website must target the forum for general jurisdiction).

The only actual connection Plaintiff even alleges concerning Sterling and the state of Florida is that Sterling has physical jewelry store locations in the state of Florida. (*See* DE 1 ¶ 12.) Of course, these locations have nothing to do with the case at issue. *See Walden*, 134 S. Ct. at 1121; *see also Goodyear*, 564 U.S. at 931 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."); *Bristol-Myers*, 137 S. Ct. at 1781.[4] Plaintiff's claims do not arise out of a physical Sterling location. Plaintiff instead simply alleges that she has visited the Website. (*See, e.g.*, DE 1 ¶¶ 17,

---

[4]    It is further clear Plaintiff cannot leverage jurisdiction out of the fact that the Website may be available to other visually impaired persons in Florida. *See Bristol-Myers*, 137 S. Ct. at 1781.

20.)  Plaintiff further alleges that *she does not* want to visit a physical Sterling location at all. (*Id.* ¶ 18.)  That Sterling has physical stores in Florida thus cannot form the basis of specific jurisdiction.

Plaintiff's trespass claim likewise fails to confer specific jurisdiction.  Plaintiff contends that by virtue of having visited www.kay.com, certain software has been placed on her computer. (*See* DE 1 ¶¶ 63, 67-68.)  As a preliminary matter—and as detailed in the 12(b)(6) Motion filed simultaneously herewith—Plaintiff falls woefully short of stating a claim of trespass.  Plaintiff's claim of trespass to chattels requires pleading "the intentional use of, or interference with, a chattel which is in the possession of another, without justification."  *Coddington v. Staab*, 716 So. 2d 850, 851 (Fla. Dist. Ct. App. 1998).  Here, Plaintiff contends that Sterling placed "software analytics" on her computer when she visited the Website.  (DE 1 ¶¶ 76-82.)  Even assuming the installation of software could constitute a trespass, Plaintiff fails to allege any *facts* to support the notion that any software was ever installed on *her computer*.  At best, Plaintiff alleges that Sterling *may collect* or *may access* certain information from website visitors, not that software or any products are *uploaded* or *installed* onto a visitor's computer.  (*See id.*)  It is nonsensical that the collection of information could constitute an intentional interference with chattel.  *See, e.g.*, *Inventory Locator Serv., LLC v. Partsbase, Inc.*, No. 02-2695, 2005 WL 2179185, at *12 (W.D. Tenn. Sept. 6, 2005) ("Because Florida has previously held that trespass to chattels must involve movable personal property, the state does not recognize a cause of action for trespass to chattels in cyberspace.").  Plaintiff also fails to allege that she was somehow prevented from reviewing Sterling's privacy policy (*i.e.*, that it was unreadable by her screen reading software) such that any access of her information would have been without justification.

Plaintiff's complete failure to allege trespass notwithstanding, she must allege that Sterling expressly aimed a trespass at the state of Florida, with the knowledge that it would impact Plaintiff in Florida.  *See Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008). Plaintiff fails to meet this threshold.  Plaintiff contends that the Website may ***automatically*** collect information regarding ***all*** of its users.  (*See* DE 1 ¶¶ 51, 76-81.)  This, again, is the antithesis of express aiming.  *See, e.g.*, *Gullen*, 2016 WL 245910, at *3 ("As noted above, plaintiff alleges that Facebook uses the tag suggestions and facial recognition software on all uploaded photos, not just those uploaded in or by residents of Illinois.  Moreover, plaintiff does not, and could not plausibly, allege that Facebook knew an Illinois resident would upload a photo of him and tag his name to it, thereby (allegedly) giving Facebook access to plaintiff's biometric information.").

At the end of the day, Plaintiff fails to allege that Sterling has targeted the state of Florida in any manner through the Website, let alone that Sterling's "suit-related conduct . . . create[s] a substantial connection with the forum state." *Walden*, 134 S. Ct. at 1121.

### iii.    *Sterling Could Not Reasonably Anticipate Being Haled Before a Florida Court Regarding its Website.*

The Supreme Court has long stressed that the Due Process Clause affords "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations and citation omitted).  For purposes of specific jurisdiction, "[t]he primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum State." *Bristol-Myers*, 137 S. Ct. at 1779.

Permitting specific jurisdiction here turns the relevant analysis on its head, turning away from Sterling's intentional contacts and focusing instead on where a plaintiff happens to be when he or she chooses to visit the site.  In other words, Plaintiff would have this Court reduce the Eleventh Circuit's "reasonable anticipation" prong to a nullity.  Permitting suit nationwide based solely on the maintenance of a website would swallow the general jurisdiction analysis.  Indeed, it would render superfluous the Supreme Court's recent holding that "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 134 S. Ct. at 762 n.20; *see also Advanced Tactical*, 751 F.3d 796, 803 ("[I]f having an interactive website were enough in situations like this one, there is no limiting principle—a plaintiff could sue everywhere.").

In any event, under *Walden*, Sterling could not reasonably anticipate being haled into this Court on the basis of its Website.  First, contacts between Plaintiff and Florida are irrelevant—it is *only* the *intentional suit-related* contacts that the defendant makes that are relevant.  *See Walden*, 134 S. Ct. at 1122.  Second, and similarly, "due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State," not "random, fortuitous, or attenuated contacts" or "the unilateral activity of a plaintiff." *Id.* at 1123 (internal quotations and citation omitted).  Plaintiff's theory of jurisdiction would put plaintiffs in the driver's seat, rather than defendants.  Jurisdiction would be based entirely on the fortuitous circumstance that Plaintiff happened to (allegedly) access the Website at issue from Florida.  Likewise, jurisdiction here would be based solely on Plaintiff's unilateral activity in accessing the Website.  *See also Walden*, 134 S. Ct. at 1125 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").

As a final matter, Plaintiff may point to purported some level of interactivity on the Website (*i.e.*, the ability to make a purchase) as a basis for claiming that Sterling reasonably anticipated being haled before this Court. Notwithstanding that Plaintiff fails to make any allegations connecting this interactivity to the state of Florida, "[t]he interactivity of a website is . . . a poor proxy for in-state contacts." *Advanced Tactical*, 751 F.3d at 803. As in *Advanced Tactical*, Plaintiff's claims have nothing to do with the interactivity of the Website. Rather, the claims arise solely out of Plaintiff having accessed the site—not having purchased or ordered anything from it.

The focus of the jurisdictional inquiry must be on *the defendant's* intentional contacts with the forum state. Here, there are no contacts relevant to this action, nor does Plaintiff identify any. Sterling thus could not have anticipated being haled before this Court regarding its Website.

## II. IN THE ALTERNATIVE, THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF OHIO UNDER 28 U.S.C. § 1404(a).

Pursuant to § 1404(a), "for the convenience of the parties and witnesses, and in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see also Carucel Investments, L.P. v. Novatel Wireless, Inc.*, 157 F. Supp. 3d 1219, 1223 (S.D. Fla. 2016) (Bloom, J.). A district court has broad discretion to determine whether to transfer an action, and evaluates a number of factors implicating the convenience of the parties and witnesses and the interests of justice. *See, e.g., Id.*; *see also Morrissey v. Subaru of Am., Inc.*, No. 1:15-CV-21106, 2015 WL 9583278, at *2 (S.D. Fla. Dec. 31, 2015) (evaluating the relevant factors). To that end, courts have long held that the "interest of justice . . . may be determinative . . . even if the convenience of the parties and witnesses might call for a different result." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217,

220 (7th Cir. 1986); *see also Reg. of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (same).

Importantly, transfer of a case is appropriate prior to ruling on a pending Rule 12(b)(2) motion to dismiss. *See, e.g., Koehring Co. v. Hyde Const. Co.*, 324 F.2d 295, 298 (5th Cir. 1963) ("[W]hether or not the trial court below had personal jurisdiction over the defendant, for 'the convenience of parties and witnesses' and 'in the interest of justice' the cause should be transferred to Oklahoma."); *Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1107 (5th Cir. 1981) (same).

### A.    Venue Is Proper in the Northern District of Ohio.

Under § 1404(a), transfer can be made to any district where the case could have been filed. Here, the case could have been brought in the Northern District of Ohio. Venue is proper "in a judicial district in which any defendant resides . . . ." 28 U.S.C. § 1391(b)(1). It is indisputable that Sterling is a resident of Ohio under the venue statute. 28 U.S.C. § 1391(c)(2); (*see also* Habel Decl. ¶ 2.). Venue is thus proper in the Northern District of Ohio.

### B.    The Interests of Justice Strongly Favor Transferring This Action to Ohio, Where There Is No Question Regarding Personal Jurisdiction.

Transfer is proper to "avoid unnecessary inconvenience to the litigants, witnesses, and the public, and to conserve time, energy, and money." *Cellularvision Tech. & Tele., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1188-89 (S.D. Fla. 2007). There can be no doubt transferring this case, which would moot a complex issue of jurisdiction, will avoid unnecessary inconvenience and will enable the Parties and this Court to conserve significant time, energy and money.

Courts in the Eleventh Circuit routinely transfer cases where personal jurisdiction is uncertain in the transferee district, but certain in the transferor district:

- ***Berrada v. Gadi Cohen & PNY Techs., Inc.***, No. 9:15-CV-81417, 2016 WL 6427834, at *3 (S.D. Fla. Feb. 2, 2016) (transferring case to New Jersey, holding, in part, "as evidenced by Defendant Gadi Cohen's pending motion to dismiss for lack of personal jurisdiction, this Court's jurisdiction over Mr. Cohen has been called into question. The state of New Jersey clearly has personal jurisdiction over Mr. Cohen in light of his residence in that state.").

- ***Arcadia Health Servs., Inc. v. Martinez***, No. 14-80561-CIV, 2015 WL 11348281, at *1 (S.D. Fla. Jan. 6, 2015) ("[T]ransferring this action to the Northern District of California will likely moot any issues of personal jurisdiction, since all Defendants reside in California and allegedly committed the wrongful acts there.").

- ***Bartlett ex rel. Bartlett v. Overslaugh***, No. 12-60271, 2012 WL 12885236, at *3 (S.D. Fla. Aug. 3, 2012) ("Transfer to the District of Columbia, by contrast, would eliminate these issues [of personal jurisdiction] and permit a more efficient resolution of the merits of this case.").

- ***Intergraph Corp. v. Stottler, Stagg & Assocs., Inc.***, 595 F. Supp. 976, 980 (N.D. Ala. 1984) ("In the face of [a personal jurisdiction challenge], the considerations warranting transfer become all the more compelling. Judicial economy would hardly be furthered by retaining the action in this district when doing so would require a decision on a close question of constitutional law, a decision which would surely require a substantial investment of judicial resources by this Court and would almost certainly generate one or more appeals. . . . The existence of other factors warranting transfer of this action to Florida, where the district court would clearly have jurisdiction to render a judgment on the merits, counsels strongly against stepping into the muddy waters of this jurisdictional morass.").

- ***Davis v. Metro Goldwyn Mayers Pictures***, No. 2:05CV860-T, 2007 WL 951754, at *4 (M.D. Ala. Mar. 27, 2007) ("[T]ransferring this action to a jurisdiction where jurisdiction and venue are already known to be appropriate rather than prolonging this litigation to conduct discovery on the propriety of hearing this matter here or in Georgia appropriately safeguards against 'expend[ing] significant judicial resources in further addressing an issue collateral to the merits of the underlying dispute and which could be challenged on appeal.'") (internal citation omitted).

- ***C.M.B. Foods, Inc. v. Corral of Middle Georgia***, 396 F. Supp. 2d 1283, 1289 (M.D. Ala. 2005) ("Because the court's personal jurisdiction over the Stephensons is greatly doubtful and because C.M.B. will not be significantly inconvenienced by a transfer to Georgia, the court finds that pursuant to 28 U.S.C. § 1404(a), it is in the interest of justice to transfer

this action to the Southern District of Georgia, a forum that unquestionably meets the venue and personal jurisdiction requirements for all of the defendants in this lawsuit.").

- ***Baker v. Major League Baseball Properties, Inc.***, No. 308CV114, 2009 WL 1098482, at *1 n.1 (N.D. Fla. Apr. 22, 2009) (transferring case to Southern California to avoid reaching the merits of the motion to dismiss for lack of personal jurisdiction).

Here, there is serious doubt as to this Court's jurisdiction over Sterling.  At best, Plaintiff's decision to view the Website in Florida is the only connection this case has to Florida. Moreover, the Eleventh Circuit has limited post-*Walden* precedent and limited precedent in the website context, rendering jurisdiction particularly complex.  Transferring this case will allow a far more expeditious resolution by avoiding "the muddy waters of this jurisdictional morass," including potential jurisdictional discovery and a possible appeal.  *Intergraph Corp.*, 595 F. Supp. at 980.

### C.   Florida Has No Interest in Adjudicating This Dispute.

This case has nothing to do with the state of Florida.  Indeed, the only thing connecting this case to Florida is that it happens to be where Plaintiff was when she allegedly viewed the Website (and where her counsel is located).  The vast majority of the conduct at issue—the design and implementation of the Website—occurred in Akron, Ohio.  (*See* Habel Decl. ¶¶ 7, 8.) The relevant information will likewise be in Akron, where the in-house Kay.com e-commerce team is based.  (*See id*.)  The relevant witnesses—indeed, nearly every relevant Sterling employee—reside in Akron, Ohio.  (*See id*.)  It is likely only one deposition—Plaintiff's—will occur in Florida.

This action is analogous to trademark or patent infringement actions, where the locus of operative facts is where the product at issue was designed and developed.  *See, e.g.*, *Carucel*, 157 F. Supp. 3d at 1225.  This is generally the location of the alleged infringer's principal place of

businesses. *Id.* Here, since the launch of the Website, the design and implementation of the Website took place in predominantly in Akron. (*See* Habel Decl. ¶ 7); *Rothschild Storage Retrieval Innovations, LLC v. Sony Mobile Commc'ns (USA) Inc.*, No. 14-22652, 2015 WL 224952, at *5 (S.D. Fla. Jan. 15, 2015) (Bloom, J.) ("As the Accused Products were developed in California, the operative facts of this litigation and this matter's 'center of gravity' is located there, and, accordingly, Plaintiff's choice of forum is entitled to less deference."); *see also Simonoff v. Kaplan*, No. 09-cv-5017, 2010 WL 1195855, at *3 (N.D. Ill. Mar. 17, 2010) (transferring action to company's home jurisdiction because "[t]he Southern District of New York has a compelling interest in resolving this dispute. The citizens of New York have an interest in ensuring that corporations that call it home are justly tried–neither allowed to scoff at the law nor punished without cause."). That Plaintiff may have been in Florida at the time she viewed the Website does not shift the focus of this case to Florida.

**D.     Plaintiff's Choice of Venue Is Entitled to Minimal Deference.**

In circumstances such as this, where the locus of operative facts is plainly elsewhere, Plaintiff's choice of forum is entitled to less deference. *See, e.g.*, *Rothschild*, 2015 WL 224952, at *5 (according less deference because "center of gravity" of the case was elsewhere); *Wi-LAN USA, Inc. v. Apple Inc.*, No. 12-24318, 2013 WL 1343535, at *5 (S.D. Fla. Apr. 2, 2013) (same)

Plaintiff's choice of forum is also entitled to less deference because Plaintiff is effectively seeking class relief. The focus of Plaintiff's action is to require Sterling to update its Website "to remove barriers in order that individuals with visual disabilities can access the Website. . . ." (DE 1 at 15.) This case is in reality about visually impaired persons everywhere. *See, e.g.*, *Moghaddam v. Dunkin Donuts, Inc.*, No. 02-60045, 2002 WL 1940724, at *2 (S.D. Fla. Aug. 13, 2002) ("[A] plaintiff's choice of forum will be afforded less deference where, as here, the action

is a class action" because any potential plaintiff is "equally entitled voluntarily to invest themselves" with the cause of action in their "many home courts") (internal citations and quotation omitted).

## CONCLUSION

For the foregoing reasons, Sterling respectfully requests this Honorable Court to (i) dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2); (ii) alternatively, transfer this action pursuant to 28 U.S.C. § 1404(a) to the Northern District of Ohio; and (iii) award all other relief deemed equitable and just.

## **REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), Sterling respectfully requests oral argument on this motion.  As detailed above, the motion raises novel and complex issues pertaining to the exercise of personal jurisdiction relating to a website.  Oral argument will help this Court evaluate these novel and complex issues, as well as determine whether it is more advantageous to simply transfer this action to the Northern District of Ohio.

Sterling believes this hearing would last approximately one hour and could be held simultaneously with a hearing on Sterling's Rule 12(b)(6) motion to dismiss.

**DATED:** December 12, 2017                    Respectfully submitted

                                               /s/ Mark Schellhase

                                               Courtney C. Booth, Esq. (*pro hac vice* to be filed)
                                               cbooth@beneschlaw.com
                                               **BENESCH, FRIEDLANDER,**
                                               **COPLAN & ARONOFF** LLP
                                               333 West Wacker Drive, Suite 1900
                                               Chicago, Illinois 60606
                                               Telephone: (312) 212-4949
                                               Facsimile: (312) 767-9192

                                               Mark Schellhase, Esq.
                                               mark.schellhase@gray-robinson.com
                                               **GRAY ROBINSON**
                                               Mizner Park Office Tower
                                               225 N.E. Mizner Blvd., Suite 500
                                               Boca Raton, Florida 33432
                                               Telephone: (561) 368-3808
                                               Fax: (561) 368-4008

                                               *Counsel for Sterling Jewelers Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing **STERLING'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IN THE ALTERNATIVE MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF OHIO WITH INCORPORATED MEMORANDUM OF LAW** was served upon all interested parties using this Court's ECF filing system this 12th day of December, 2017.

/s/ Mark Schellhase